UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCH AUGUST,

    Plaintiff,                                  Case No. 13-13894

                                              Paul D. Borman
v.                                           United States District Judge

MANLEY TOYS, LIMITED,
d/b/a TOY TECK LIMITED,
a foreign corporation,

    Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION (ECF NO. 5)

Before the Court is Defendant Manley Toys, Limited's ("Manley") Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. (ECF No. 5.) Plaintiff filed a Response (ECF No. 7) and Manley filed a Reply (ECF No. 8). The Court has determined that oral argument will not assist the Court in resolving the motion and decides the matter on the briefs. *See* E.D. Mich. L. R. 7.1(f)(2). The hearing scheduled for November 13, 2014 at 3:30 p.m. is CANCELED. For the reasons that follow, the Court DENIES the motion.

**INTRODUCTION**

Defendant Manley Toys, Limited ("Manley") is a Hong Kong company that seeks to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Manley claims that it does not maintain a place of business in Michigan, has no registered agent in Michigan and does not conduct business in Michigan. It claims that its only connection with Michigan is that it entered into a contract with the Plaintiff, an independent sales representative, to solicit other companies in

1

Michigan (and throughout the United States) to purchase Manley products direct from Manley in Hong Kong. Plaintiff responds that Manley entered into a contract with a Michigan resident (Mitch August) to sell its products throughout the United States, including in Michigan and by virtue of that contract alone could reasonably have expected to be brought into court in Michigan. Additionally, Plaintiff claims that Manley sells its products nationwide to Meijer, a retail company headquartered in Michigan and also identified its products as emanating from Toy Teck Ltd., a division of Manley, located in Waterford, Michigan. For the reasons that follow, the Court DENIES Manley's Motion to Dismiss.

**I.      BACKGROUND**

Plaintiff Mitch August ("August") is a United States citizen and citizen of the State of Michigan. (ECF No. 7, Pl.'s Resp. Ex. 1, August 25, 2014 Unsworn Declaration Pursuant to 28 U.S.C. § 1746 of Mitch August ¶ 1.) On September 20, 2007, August entered into a contract with Manley to sell Manley products throughout the United States, including in the State of Michigan. *Id*. ¶ 5. From 2007 to 2012, Manley wired commissions on those sales into August's account at TCF Bank branches in Waterford, Michigan and Walled Lake, Michigan. *Id*. ¶ 9. Toy Teck Limited, a Hong Kong entity, ("TT-HongKong") is a division of Manley. *Id*. ¶ 13. August and Eric Moorehead were the sole shareholders of a Michigan corporation named Toy Teck Corporation ("TT-Michigan") and in September, 2007, TT-Hong Kong purchased the assets of TT-Michigan. *Id*. ¶¶ 14-15. In July, 2008, at the direction of Manley executives in Hong Kong, August filed with the State of Michigan an LLC named "Toy Teck Limited, LLC." *Id*. ¶ 17. Within weeks of filing the LLC papers in Michigan, Manley instructed August to dissolve the LLC. The purpose of Toy Teck Ltd., LLC was Administration and Sales, marketing and product development for parent

2

company, Toy Teck Ltd. HK a division of Manley. *Id.* ¶ 18, Ex. 5.

The contract between Manley and August specifies August will receive 4% commission on all orders under Toy Teck Limited, a Hong Kong corporation, and that "Manley appoints Mitch (August) the President of Toy Teck Ltd." Pl.'s Resp. Ex. 2, Contract ¶¶ 1.1, 2.8. August received over 10,000 emails from Manley Hong Kong employees and several hundred phone calls were placed by Manley Hong Kong employees to August in Michigan from August, 2007 to January, 2012. *Id.* ¶ 21.

Manley does not deny any of the averments set forth in August's declaration but responds that the September 20, 2007 contract with August appointing him an independent sales representative for Manley is Manley's only connection with Michigan. (ECF No. 5, Def.'s Mot. to Dismiss Ex. A, July 24, 2014 Affidavit of Samuel Lee ¶ 14-15.) Manley explains that its business model is to contract with independent sales representatives who "convince" companies throughout the United States to travel to Manley's showroom in Hong Kong to view and ultimately purchase Manley products. *Id.* ¶ 13. Manley avers that its products are normally acquired by purchasers in Hong Kong or China and the products are then shipped by the purchasing company to the purchasing company's destination. *Id.* ¶ 9.

## II. STANDARD OF REVIEW

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court has three options when faced with a motion to dismiss for lack of personal jurisdiction. The court may: (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews*, 935 F.2d

1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Although the plaintiff always bears the burden of establishing that jurisdiction exists, the method selected by the court to resolve the issue will affect the weight of the burden. *Id.* The Sixth Circuit recently reiterated these options and the effect that the manner of resolution has on the plaintiff's burden in establishing that jurisdictions exists:

> The plaintiff bears the burden of establishing through "specific facts" that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence. *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n. 3 (6th Cir. 2006); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). But where, as here, the defendant has moved to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a "prima facie" case that the court has personal jurisdiction. *Kroger,* 437 F.3d at 510. In this procedural posture, we do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions. *See Kerry Steel [Inc. v. Paragon Indus.*], 106 F.3d [147 (6th Cir. 1997)] at 153; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996). But also where, as here, "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction," the prima facie "proposition loses some of its significance." *[Int'l Technologies Consultants, Inc. v.] Euroglas S.A.*, 107 F.3d [386 (6th Cir. 1986)] at 391.

*Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

Thus, when the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Theunissen*, 935 F.2d at 1458. In such a scenario, the pleadings and affidavits are read in the light most favorable to the plaintiff. *Id.* at 1459. A moving defendant's contrary assertions can, however, present factual disputes that merit further investigation before an ultimate decision can be made whether jurisdiction exists. *Id.* at 1465 (remanding for an evidentiary hearing because of the "directly contradictory nature of the parties' assertions"). If an evidentiary hearing is held, generally the plaintiff must

4

demonstrate that jurisdiction is proper by a preponderance of the evidence. *Id. But see Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509, at *2 n. 3 (E.D. Mich. May 23, 2012) (concluding that simply permitting the parties to engage in discovery on the issue of personal jurisdiction, without holding an evidentiary hearing, and ultimately deciding the issue based on written submissions after discovery, does not necessarily increase plaintiff's burden to demonstrate jurisdiction by a preponderance of the evidence).

## III. ANALYSIS

Jurisdiction over a non-resident defendant is permitted in Michigan if suit can be brought against the defendant under Michigan's long-arm statute without violating the due process requirements of the Constitution:

> A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted). Deciding whether jurisdiction exists is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[T]he Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (internal quotation marks and citations omitted)). The court's jurisdiction accordingly extends only to those parties who have in some fashion placed themselves in the hands of the tribunal.

*Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

The Michigan Supreme Court has interpreted Michigan's long-arm statute as providing for the broadest grant of jurisdiction consistent with due process. *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (citing *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971)). "Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident

5

corporations pursuant to Mich. Comp. Laws § 600.715, and "general" jurisdiction pursuant to Mich. Comp. Laws § 600.711. Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is related to its activities in the state or has an in-state effect." *Neogen*, 282 F.3d at 888. Only limited personal jurisdiction is at issue in this Opinion and Order.[1]

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. To meet the requirements of due process, a defendant must "have certain minimum contacts with the forum such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

### A. Authorized by the Law of the Forum State – Michigan's Long Arm Statute

Michigan law describes the circumstances by which a Michigan court can exercise limited personal jurisdiction over a corporation or its agents:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising

---

[1] In this case, Plaintiff makes a half-hearted effort to argue that Manley has sufficient contacts with Michigan through its sales to Meijer and other retail outlets to establish the type of "continuous and systematic contacts" that would support the Court's exercise of general jurisdiction. The Court does not rely on this "evidence" in reaching its conclusion that the Court may exercise limited personal jurisdiction over Manley in this case given Manley's contacts with August in this state. The Court expresses no opinion as to whether Manley would be subject to general personal jurisdiction in Michigan.

> out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within [Michigan].
>
> (2) The doing or causing any act to be done, or consequences to occur, in [Michigan] resulting in an action for tort.
>
> (3) The ownership, use, possession of any real or tangible personal property situated within this state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws Ann. § 600.715.

As this Court noted in *Light Source, Inc. v. Display Dynamics, Inc.*, No. 09-14268, 2010 WL 2351489, at *3 (E.D. Mich. June 8, 2010):[2]

> The Sixth Circuit has recognized that the transaction of "any" business under MCL § 600.715(1) is established by the "slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971)). "Neither the presence of the defendant in the state, nor the actual contract formation need take place in the forum state for the defendant to do business in that state." *Lanier*, 843 F.3d at 907. In *Lanier*, defendant's correspondence and telephone calls with the Michigan plaintiff, and its acceptance of payment from the plaintiff, satisfied the "any business" standard. The Sixth Circuit has recently reaffirmed the expansive reach of Michigan's long arm statute to the "full potential" of personal jurisdiction, with just

---

[2] Because Plaintiff's responsive brief has lifted verbatim, and disturbingly without attribution, enormous portions of this Court's 2010 Opinion and Order in *Light Source*, the Court is forced to quote its own prior Opinion at length to eliminate any suggestion that this Court is wholesale adopting the Plaintiff's brief in rendering this Opinion and Order. In fact, in responding to Manley's motion, Plaintiff has blatantly copied and pasted enormous portions of this Court's discussion and analysis of the applicable law in *Light Source*, suggesting to any reader of the brief that Plaintiff's counsel had woven the arguments himself. Whether Plaintiff's failure to cite the *Light Source* decision was intentional or simply incredibly irresponsible, the Court is not amused. Nonetheless, because the Court's discussion and analysis of the law in *Light Source* is highly relevant to the facts of this case, that opinion is quoted at length here.

7

>the "slightest act of business in Michigan" satisfying the statute. *Citizens Bank v. Parnes*, No. 09–1306, Slip Op. at 7 (6th Cir. May 4, 2010) (unpublished).

*Light Source*, 2010 WL 2351489, at *3 (quoting *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010)).[3] The Sixth Circuit in *Parnes* also noted that Michigan courts have held that the Michigan long-arm statute "'is intended to be liberally construed in favor of recognizing limited personal jurisdiction especially where an ordinary commercial transaction is involved, absent violation of due process of law.'" *Id.* (quoting *Lazzaro v. Charlevoix Lakes*, 108 Mich. App. 120, 310 N.W.2d 295, 297 (1981)).

Manley does not contest August's allegation that from 2007 to 2012, Manley wired money into August's TCF bank accounts in Waterford and Walled Lake, Michigan. Nor does Manley contest August's allegation that he received over 10,000 emails from Manley Hong Kong employees and several hundred phone calls to August in Michigan over the course of the parties' five-year relationship. Nor can Manley contest that under the terms of the contract between Manley and August, Manley appointed August the President of Toy Teck LTD to market and solicit sales for Manley products through the Toy Teck LTD entity in Michigan and elsewhere throughout the United States.

**B.   In Accordance with Due Process**

As this Court stated in *Light Source*:

---

[3] Plaintiff's offending lack of attribution to this Court's opinion in *Light Source* is particularly egregious in the instance of the citation to *Parnes* which, at the time this Court issued its opinion in *Light Source* in 2010, was available in slip opinion format only. Plaintiff in this case simply reiterated the Court's slip opinion citation, not even taking note of the fact that the slip opinion citation has long since been updated to the Federal Appendix citation. Another noteworthy example of the "lifting" of the Court's language from *Light Source* that bears mention appears at page 13 of Plaintiff's response, where Plaintiff refers to itself as "this Court."

Although authorized by the Michigan long-arm statute, the exercise of personal jurisdiction over DDI must still be in accord with the due process clause of the Fourteenth Amendment. "The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472 (internal quotation marks and citations omitted). Where a defendant "purposefully directs" his activities at residents of the forum state, that state has an interest in protecting its residents by "providing [them] with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id*. at 473. Where such purposeful conduct has occurred, the defendant can be assured that he will not be haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. at 475 (internal quotation marks and citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474 (quoting *Int'l Shoe*, 326 U.S. at 316).

The Sixth Circuit utilizes a three-part test for determining whether the exercise of specific personal jurisdiction over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Light Source*, 2010 WL 2351489, at *4 (quoting *Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### 1. "Purposeful Availment"

As this Court noted in *Light Source*, this Court may not exercise personal jurisdiction over Manley unless Manley "has purposefully entered into a connection within Michigan 'such that [it]

9

should reasonably anticipate being haled into court [in Michigan].'" *Id*. at *4 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (alteration in original).  As this Court noted in *Light Source*, the Sixth Circuit discussed the purposeful availment prong in *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2008).  The Court's discussion of *Air Products* in its opinion in *Light Source*, is pertinent here:

> Air Products involved an interstate contract between plaintiff Air Products, a Delaware company headquartered in Michigan, and defendant Safetech, a Kansas corporation. [503 F.3d] at 548. Safetech opened a credit account with Air Products and over the course of a number of years, Safetech purchased goods on credit from Air Products, submitting hundreds of orders by phone, fax, email and regular mail. *Id*. The goods were shipped by Air Products either to Safetech in Kansas or directly to Safetech's customers. *Id*. After several years, Safetech began failing to make payments to Air Products and litigation ensued in the United States District Court in Kansas. *Id*. The district court entered judgment in favor of Air Products but Air Products was never able to collect from Safetech, who allegedly was without funds to satisfy the judgment. Air Products later learned that Safetech had transferred assets that should have been used to pay the Air Products judgment and Air Products filed suit against Safetech in state court in Michigan alleging fraudulent transfer. *Id*. at 549. Safetech removed to this District and moved to dismiss for lack of personal jurisdiction.
>
> First finding jurisdiction under Michigan's long-arm statute, the Sixth Circuit next analyzed the due process implications of exercising jurisdiction over Safetech, discussing at length the "puposeful availment" prong of the minimum contacts constitutional analysis:
>
>> With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions for the consequences of their activities.... In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not "random" or "fortuitous" or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.
>
> 503 F.3d at 551 (quoting *Burger King*, *supra* at 473, 478–479).

> Acknowledging that the contacts between Air Products and Safetech over the years were admittedly "numerous," the court cautioned that a "numerical count of the calls and letters has no talismanic significance," and focused instead on the quality of those contacts. *Id*. at 551 (quoting *LAK Inc. v. Deer Creek Enters*., 885 F.2d 1293, 1301 (6th Cir. 1989)). Recognizing that a defendant's contacts "lack quality when they are initiated by the plaintiff rather than the defendant, in part because the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum," the court found the opposite to be the case with Safetch. *Id*. at 552 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Focusing on Safetech's numerous telephone, email, fax and regular mail contacts with Air Products over the course of the parties' contractual dealings, most of which were initiated by Safetech's placement of orders with Air Products, the court concluded that these contacts were not "simply the result of unilateral activity on the Air Products" but were initiated by Safetech with a known Michigan-based company in furtherance of the parties' business relationship. *Id*. at 551–552.

*Light Source*, 2010 WL 2351489, at *4-5 (first alteration added).

Similarly here, Manley reached out to August in 2007 by entering into a contract with August, restricting August from representing competing toy companies, precluding him from selling products that compete with Manley, requiring him to respond to emails from Manley within 24 hours (and obligating Manley to do the same with regard to emails from August), and appointing August as the President of Toy Teck LTD, a company incorporated by Manley in Hong Kong. August was appointed a sales representative for the United States of America (including Michigan) and was limited by the contract to selling Toy Teck LTD products only. Pl.'s Resp. Ex. 2, Contract. The parties operated under this agreement for over five years, with Manley sending over 10,000 emails and placing several hundred phone calls to August in Michigan, and sending numerous electronic deposits to August's Michigan bank accounts. These are not "random," "fortuitous," or "attenuated" contacts and these contacts were initiated by Manley, not by August. The Court concludes that this conduct satisfies the purposeful availment prong of the due process inquiry.

Manley urges the Court to conclude otherwise based upon the Sixth Circuit's opinion in *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). But, as this Court discussed at length in its opinion in *Light Source*, *Calphalon* has often been criticized as irreconcilable with controlling Supreme Court precedent:

> Light Source correctly observes that several courts, along with the dissent in *Calphalon*, have had difficulty reconciling *Calphalon* with controlling Supreme Court precedent. *Cf. Frankenmuth Mutual Ins. Co. v. Appalachian Underwriters, Inc*., No. 03–10193, 2004 WL 1406121 at *9 (E.D. Mich. June 21, 2004) (unpublished) ("This Court finds it difficult to reconcile the holding in *Calphalon* with the Supreme Court's pronouncements in *Burger King*."). Calphalon, an Ohio corporation, engaged defendant Rowlette, a Minnesota resident, as its exclusive manufacturer's representative for its products in five states, none of which was Ohio. 228 F.3d at 720. During the course of the relationship, Rowlette corresponded with Calphalon in Ohio via email, fax and telephone. When Calphalon announced that it was not going to renew Rowlette's agreement, Rowlette expressed its intent to seek damages for breach of contract and unpaid commissions. *Id*. at 720–721. Calphalon filed suit in the United States District Court in Ohio seeking a declaratory judgment that it owed Rowlette nothing under the terms of the agreement. *Id*. at 721. Rowlette moved to dismiss the Ohio action, alleging lack of personal jurisdiction. The court granted the motion to dismiss, finding that Rowlette's contacts with Ohio were too random, fortuitous and attenuated. *Id*. at 723.
>
> In Frankenmuth, *supra*, Judge Lawson questioned the *Calphalon* holding, ultimately distinguishing the case on grounds that this Court finds also applicable here:
>
>> If there is a distinction to be made between the critical facts in *Calphalon* and *Burger King*, it perhaps can be derived from the absence of any activity by Rowlette himself directed into the forum state. For all that can be determined from the opinion in that case, it appears that Rowlette simply arranged sales in other states and reported on market conditions there. He never remitted payment for any goods to Calphalon's headquarters, nor did he "reach out beyond" Minnesota for the purpose of deriving the benefit of affiliating with a "nationwide organization," as did John Rudzewicz in the *Burger King* case. Moreover, the lawsuit in that case was a declaratory judgment action in which Calphalon sought a ruling that it owed nothing to Rowlette, not that Rowlette had damaged Calphalon. [*Frankenmuth Mutual Ins. Co. v. Appalachian Underwriters, Inc*., No. 03–10193,] 2004 WL 1406121 at *9 [E.D. Mich. June 21, 2004)].

12

*Light Source*, 2010 WL 2351489, at *5-6. *See also Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 925 (E.D. Tenn. 2012) (citing this Court's opinion in *Light Source* and noting that "[s]everal courts have distinguished *Calphalon* from the majority of breach of interstate contract claims, because in *Calphalon*, the plaintiff company sought declaratory judgment that it owed nothing to a former sales representative [whereas] [i]n this case, like most others for breach of contract, Plaintiff seeks economic damage for an alleged breach of contract that threate[ne]d or otherwise adversely affected Plaintiff's ability to conduct business").

As in *Light Source* and *Functional Pathways*, this Court finds that Manley's conduct in contracting with August and performing under that contract for an extended period of time, wiring payments under the contract to August here in Michigan and communicating with August extensively here in Michigan via email and telephone created a "substantial connection" with Michigan. In allegedly refusing to remit payments for work August alleges he performed under the contract, Manley could reasonably expect to be haled into court in here. "Surely, based upon these contacts, [Manley] had "fair warning" that these activities, specifically directed toward [August] in Michigan, if injurious to [August], might require [Manley] to come to Michigan to answer for its conduct. Certainly, in such an instance, Michigan has an interest in providing [Manley] with a forum to attempt to redress these wrongs. This is all that traditional notions of justice and fair play require." *Light Source*, 2010 WL 2351489, at *6 (alterations added).

### 2. Arising From

As this Court noted in *Light Source*, "[t]he arising from prong of the *Southern Machine* test is satisfied if 'a defendant's contacts with the forum state are related to the operative facts of the controversy.'" 2010 WL 2351489, at *6 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267

(6th Cir. 1996)). August's Complaint in this case directly relates to the alleged failure to pay sales commissions due under the 2007 contract between Manley and August, a contract that Manley entered into with August who was at that time a citizen and resident of the State of Michigan. Manley's contacts with Michigan thus relate directly to the operative facts of this controversy. Manley argues that its business model of having its United States sales representatives like August solicit purchasers for Manley products who ultimately travel to Hong Kong or China to make those purchases allows it to evade this Court's jurisdiction because the actual sales of products on which August claims commissions are consummated in Hong Kong. But this case is about the business deal that Manley made with August in September, 2007, when it hired August to solicit business for Manley products throughout the United States and Canada, and when it promised to pay August commissions for soliciting that business, which Manley did pay to August by wiring funds directly to August's bank accounts in Michigan. Manley insists, however, that "had Plaintiff not worked to consummate sales which all occurred in Hong Kong, Plaintiff would not have received commissions." ECF No. 8, Def.'s Reply 4. But the "work" that Manley contracted with August to perform, i.e. to represent and market exclusively Manley products and to provide new and innovative products to Manley," was to be done here in Michigan, not in Hong Kong. The fact that the calculation of August's commissions was based on sales actually consummated in Hong Kong by the Michigan and other United States-based entities whom August had solicited for Manley does not diminish Manley's extensive contacts and affirmative acts in reaching out to August in Michigan to solicit orders for Manley products.

In support of its argument, Manley relies on *Int'l Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386 (6th Cir. 1997). *Euroglas* is distinguishable. To begin with, the contract in that

14

case under which the plaintiff claimed relief specified that jurisdiction for that contract was in Berne, Switzerland and that the contract was to be interpreted under Swiss law. 107 F.3d at 387. Moreover, the alleged misuse of the intellectual property at the heart of the dispute in that case occurred in Europe and it was plaintiff who solicited business with the defendants in Europe, promising among other things to build a manufacturing facility in Europe. *Id*. at 392. In this case, according to August's uncontested allegations, it was Manley that solicited the contract later claimed to have been breached, giving rise to August's claims. At bottom, *Euroglas* involved much more passive conduct on the part of the defendants than Manley is accused of here but even more distinguishing is the court's reliance on the contractual language that specified Switzerland as the jurisdictional base for the contract: "These provisions are not without relevance to the jurisdictional question presented here." *Id*. The contractual provision specifying Switzerland as the jurisdiction for the contract "strongly suggest[ed]" that the defendant should not have anticipated being haled into court here in Michigan." *Id*. There is no such contractual language here. Finally, the court in *Euroglas* dismissed the significance of the defendants' email, fax and telephone correspondence directed to the plaintiff in the state of Michigan because: "Glas Trösch was not attempting to exploit any market for its products in Michigan, and the company presumably would have been pleased to communicate with International Technologies wherever the latter wished." *Id*. at 395. Not so here where Manley specifically sought to exploit the Michigan market for the sale of its products. The Court finds *Euroglas* distinguishable and concludes that the due process "arising under" prong is satisfied here.[4]

---

[4] Manley also submits an opinion and order from the United States District Court in the Southern District of Iowa, *Rennenger v. Manley Toy Direct, et al.,* No. 10-00400 (S.D. Iowa 2010), in which Manley was dismissed for lack of personal jurisdiction. (Def.'s Reply Ex. 1.) *Rennenger* is

### 3. "Reasonableness"

As this Court noted in *Light Source*: "[W]here, as here, the first two criterion [of *Southern Machine*] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" 2010 WL 2351489, at *7 (quoting *Air Products*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461). "In determining reasonableness, the court should consider: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining the relief sought; 4) another state's interest in securing resolution of the matter." *Id*. (quoting *Air Products*, 503 F.3d at 554–55).

Whatever the burden on Manley, Michigan has a strong interest in protecting its citizens from breaches of contract such as are alleged by August against Manley in this case. It would be an enormous burden for August to attempt to litigate this claim in Hong Kong. Moreover, August's claims relate to sales made to United States companies. Nothing about this case makes Hong Kong a reasonable venue for vindication of August's rights. An inference of reasonableness is appropriate here given the Court's resolution of the "purposeful availment" and "arising under" prongs. That inference is not defeated here by considerations of reasonableness.

## IV. CONCLUSION

Manley concedes that it entered into a contract with August, does not deny that it initiated that contractual relationship and admits that the purpose of that contract was to market Manley

---

completely inapposite. Plaintiff in *Rennenger* filed a Title VII sexual harassment lawsuit against an Iowa corporation that plaintiff alleged was owned by Manley. The court in *Rennenger* expressly noted that Manley did not conduct business in Iowa, had no employees, corporate offices *or contracts* in Iowa and had no actual control over the individuals alleged to have sexually harassed the plaintiff in that case. Nothing like the facts in this case which establish that Manley reached out to a Michigan citizen and entered into a contract with that individual for the solicitation for sale of Manley products in Michigan and throughout the United States.

products to companies in the State of Michigan and throughout the United States. It does not deny that it wired money on multiple occasions into August's bank accounts in Michigan and that it sent over 10,000 emails to August in Michigan, and placed hundreds of phone calls to August here in Michigan, over the course of their contractual relationship.

For the foregoing reasons, the Court concludes that the minimum requirements of Due Process have been met here and that this Court may properly exercise personal jurisdiction over Manley. Manley's motion is DENIED.

IT IS SO ORDERED.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: November 12, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 12, 2014.

s/Deborah Tofil  
Case Manager